**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

OMRAN CONSULTING, CONSTRUCTION ）
& ENGINEERING COMPANY ）
House #452 ）
Behind Sayeed Jamaludin Middle School ）
Kabul, Afghanistan ）
）
   Plaintiff, ）
）
v. ）
）
DYNCORP INTERNATIONAL, LLC ）
3190 Fairview Park Drive, Suite 700 ）
Falls Church, VA 22042 ）
）
   Defendant. ）

Case No. 1:13-cv- 979
(LMB/TCB)

## COMPLAINT

The Plaintiff, Omran Construction Consulting & Engineering ("Omran"), sues the

Defendant, DynCorp International, LLC ("DynCorp"), and states as follows:

### PARTIES, JURISDICTION AND VENUE

1.  Omran is an Afghanistan corporation with its principal place of business

located in Kabul, Afghanistan.

2.  DynCorp is a Delaware corporation with its principal place of business

located at 3190 Fairview Park Drive, Suite 700, Falls Church Virginia 22042.

3.  This Court has original jurisdiction under 28 U.S.C. § 1332, as this is a

civil action between a citizen of a foreign state and a citizen of a State, and the matter in

controversy exceeds the sum of $75,000, exclusive of interest and costs.

4.  Venue is proper in the Eastern District of Virginia under 28 U.S.C. §

1391(b) because it is a judicial district in which the only defendant, DynCorp, resides,

and/or a substantial part of the events or omissions giving rise to the claim took place in this District.

5.      In addition, the subcontracts between the parties (as explained below) contain a clause providing for jurisdiction and venue in any federal court in Virginia.

## BACKGROUND

### Relevant Contracts and Key Provisions

6.      On or about February 28, 2008, DynCorp entered into a prime contract with the U.S. Army Corps of Engineers ("USACE"), Contract No. W917PM-08-C-0033 ("Prime Contract"), in the approximate amount of $47,500,000, which required DynCorp to design and construct various military facilities for the Afghanistan National Army (ANA) in Kunduz, Afghanistan ("Project").

7.      Thereafter, DynCorp entered into four (4) subcontracts with Omran for Omran to perform various construction work required by the Prime Contract.

8.      DynCorp and Omran entered into a subcontract on March 1, 2009 for the construction of infantry barracks compound ("IBC") structures and fit out, Subcontract No. 2009-KUN-OMRAN-IBC001 ("IBC Subcontract") in the original amount of $2,610,956.95. A true and correct copy of the IBC Subcontract is attached as Exhibit 1.

9.      DynCorp and Omran entered into a subcontract on March 20, 2009 for the phase I construction of latrines structures and fit out, Subcontract No. 2009-KUN-OMRAN-LAT002 ("Latrines Subcontract") in the original amount of $1,982,521.20. A true and correct copy of the Latrines Subcontract is attached as Exhibit 2.

10.      DynCorp and Omran entered into a subcontract on April 29, 2009 for the construction of a dining facility, LPG and solid waste collection point civil works,

2

Subcontract No. 2009-KUN-OMRAN-DFC004 ("DFAC Subcontract") in the original amount of $333,546.35.   A true and correct copy of the DFAC Subcontract is attached as Exhibit 3.

11.    DynCorp and Omran entered into a subcontract on July 15, 2010 for the construction of walkways in the area of the infantry barracks, Subcontract No. 2009-KUNDUZ-0038 ("Walkways Subcontract") in the original amount of $28,015.00.   A true and correct copy of the Walkway Subcontract is attached as Exhibit 4.  (The IBC Subcontract, Latrines Subcontract, DFAC Subcontract, and Walkways Subcontract are collectively referred to as the "Subcontracts.")

12.    Under the terms of the Subcontracts, DynCorp was required to make monthly payments for 90% of the work completed by Omran within thirty (30) calendar days after receipt of Omran's invoices.  (Ex. 1-4, Subcontracts, Part II, Commercial Terms ¶ 5.1.)

13.    The remaining ten percent (10%) of the progress payments were retainage.

14.    The Subcontracts contained a *force majeure* clause that entitled Omran to extensions of time due to reasons beyond its reasonable control.  (Ex. 1-4, Subcontracts, Part III, General Terms ¶ 27.1.)

15.    Final payment was due under the Subcontracts no sooner than thirty (30) days after receipt of Omran's invoices and not less than thirty (30) days after completion and acceptance of all work by the USACE.  (Ex. 1-4, Subcontracts, Part II, Commercial Terms ¶ 5.3.)

16. The Subcontracts provided for Omran to submit a notice of completion, affording DynCorp the opportunity to inspect and accept or reject the work within 30 days. (Ex. 1-4, Subcontracts, Part III, General Terms ¶ 29.3.)

17. The Subcontracts provided for Omran to submit a final invoice with an itemized listing of the retainages that were due. (Ex. 1-4, Subcontracts, Part II, Commercial Terms ¶ 5.3.)

18. The Subcontracts included provisions that gave DynCorp the right to assess backcharges, i.e., costs sustained by DynCorp for work that was the responsibility of Omran, provided that DynCorp complied with the backcharge provisions. (Ex. 1-4, Subcontracts, Part II, Commercial Terms ¶¶ 8.0-8.6.)

19. In particular, DynCorp was required, upon identification of a backcharge, to provide a backcharge notice to Omran, identifying the work to be performed, the schedule for performance of the work, and the cost to be charged to Omran. (Ex. 1-4, Subcontracts, Part II, Commercial Terms ¶ 8.3.)

20. DynCorp could not commence performance of backcharge work until receipt of the signed back charge notice from Omran, unless Omran refused to sign the backcharge notice, in which case DynCorp could proceed with the work. (Ex. 1-4, Subcontracts, Part II, Commercial Terms ¶ 8.6.)

21. DynCorp was then required to provide Omran with an invoice for the amount of the backcharge work within thirty (30) days of commencement of such work, or upon completion of such work, whichever occurred sooner. (Ex. 1-4, Subcontracts, Part II, Commercial Terms ¶ 8.6.)

22.     The Subcontracts provided that the law of the Commonwealth of Virginia shall govern the validity, enforceability, and interpretation of the Subcontracts, except where preempted by the laws of the United States.  (Ex. 1-4, Subcontracts, Part III, General Terms ¶ 60.1.)

23.     The Subcontracts also provide that the parties consent to jurisdiction and venue in any federal court in Virginia.  (Ex. 1-4, Subcontracts, Part III, General Terms ¶ 60.2.)

**Performance of the Subcontracts**

24.     Omran began performance of the IBC Subcontract, Latrines Subcontract, and DFAC Subcontract in the Spring 2009.

25.     Omran performed its work in accordance with the terms of the Subcontracts.

26.     However, Omran encountered numerous delays during performance of its work on the IBC Subcontract, Latrines Subcontract, and DFAC Subcontract.

27.     The delays were caused, among other reasons, by bad weather, the failure of DynCorp to timely provide required materials, and changes in the work, which were not the responsibility of Omran.

28.     Omran requested time extensions to the applicable completion dates.

29.     DynCorp granted Omran some extensions of time.

30.     DynCorp did not grant Omran all requested time extension relief.

31.     In July 2010, Omran started work on the Walkways Subcontract.

32.   On August 4, 2010, in accordance with paragraph 29.1 of the Subcontracts, Omran provided DynCorp notices of final completion on the IBC Subcontract, the Latrines Subcontract, and the DFAC Subcontract.

33.   Omran completed work on the Walkways Subcontract in August 2010 and provided DynCorp with a notice of final completion on the Walkways Subcontract.

34.   Although the work under the Prime Contract was accepted by the USACE, DynCorp did not provide Omran with notice of the final completion and acceptance of the work.

**DynCorp's Improper Withholding of Progress Payments**

35.   In or around October 2009 and thereafter, DynCorp provided Omran with notices that it intended to withhold an additional ten percent (10%) of Omran's progress payments, beyond the regular ten percent (10%) retainage, on the IBC Subcontract, the Latrines Subcontract, and the DFAC Subcontract.

36.   DynCorp advised that the withholding would continue until completion of the respective subcontracts, and at the time of subcontract completion, DynCorp would determine whether to apply the additional withholding to the assessment of liquidated damages.

37.   DynCorp took such action despite having knowledge of justifiable delays that entitled Omran to time extensions.

38.   Moreover, the IBC Subcontract, the Latrines Subcontract, and the DFAC Subcontract do not give DynCorp the right to prospectively withhold funds in this manner to address the possibility of liquidated damages not yet assessed.

39.     Importantly, the IBC Subcontract does not even contain a provision for the assessment of liquidated damages.

40.     DynCorp improperly withheld over $240,000 from Omran progress payments.

**Omran's Change Request**

41.     By letter dated June 9, 2010, Omran submitted a request for a time extension and cost modification under paragraph 3.0 of the commercial terms of the IBC Subcontract and the Latrines Subcontract ("Change Request").  A true and correct copy of the Change Request is attached as Exhibit 5. The Change Request was for $165,198 in additional costs and 332 calendar days for lost time, due to 9 issues:

   a.  $29,495 due to additional costs for use of thicker gypsum wall board with "Glass Wool" in the ceiling; these materials were not required by Omran's subcontract Scope of Work;

   b.  $14,770 of additional work, and 10 days of delay, for electrical work in the Battalion Headquarters Building that was required due to changes by DynCorp in the final electrical design, requiring rework that was not part of Omran's subcontract Scope of Work;

   c.  $16,200.60 of additional work, and 43 days of delay, for rework of door frame openings, as the door frames provided by DynCorp were different from the size shown on the design drawings DynCorp provided Omran, requiring rework of the openings during installation;

   d.  $11,599.50 of additional work, and 25 days of delay, for removal and rework of PVC electrical boxes that were approved by DynCorp, but

which DynCorp then ordered Omran to remove and replace with metal electrical boxes;

e.   DynCorp chose to supply roofing sheet metal materials from a Turkish supplier, but failed to deliver the materials on time for construction, resulting in 64 days of delay to Omran's construction work;

f.   $14,749.20 for additional costs, and 20 days of delay, for providing gypsum wall board with "Glass Wool" in the fire rated walls for the Infantry Barracks buildings;

g.   $37,884 for additional costs, and 35 days of delay, for DynCorp's directive to provide 2.10 meters of ceramic tile on the walls of all latrines, in lieu of the 2.00 meters of ceramic tile shown on the design drawings;

h.   $40,500.00 for additional costs, and 72 days of delay, for changes in the final design of the unit heaters that caused rework of conduit, wiring, and installation of unit heaters;

i.   63 calendar days of time extension due to unusually severe weather and Official Holidays that prevented work.

42.    DynCorp did not respond to Omran's June 9, 2010 Change Request for a modification under the IBC Subcontract and Latrines Subcontract.

43.    Omran is entitled to payment of $165,198 for its Change Request for additional costs for performing the work, as well as 332 days of time extensions on the IBC Subcontract and Latrines Subcontract.

44.     Despite demand, DynCorp has failed to pay Omran $165,198 and grant time extensions for 332 days as set forth in the June 9, 2010 submission.

**DynCorp's Improper Backcharges to Omran**

45.     In April 2011 and thereafter, after completion of the work under the Subcontracts, DynCorp provided Omran with notices of intent to backcharge Omran.

46.     On April 8, 2011, DynCorp submitted a notice of intent to backcharge on the IBC Subcontract in the amount of $690.00 for charges invoiced to DynCorp in February 2010. A true and correct copy of the DynCorp April 8, 2011 IBC Subcontract backcharge is attached as Exhibit 6.

47.     This backcharge notice was improper and untimely because it was issued more than one (1) year after the costs were allegedly incurred by DynCorp. (Ex. 1, IBC Subcontract, Part II, Commercial Terms ¶¶ 8.3, 8.5.)

48.     This backcharge notice did not provide Omran an opportunity to address the issue, as required by paragraph 8.5 of the Commercial Terms of the IBC Subcontract.

49.     Moreover, DynCorp had already deducted this backcharge amount from an Omran progress payment on the Latrines Subcontract.

50.     On April 8, 2011, DynCorp submitted a notice of intent to backcharge on the Walkways Subcontract in the amount of $10,268, including $24.00 invoiced to DynCorp on June 24, 2010, $486.00 invoiced to DynCorp on September 25, 2010, and $9,758.00 invoiced to DynCorp on August 22, 2010. A true and correct copy of the DynCorp April 8, 2011 Walkways Subcontract backcharge is attached as Exhibit 7.

51.     This backcharge notice was improper and untimely because it was issued more than seven (7) to nine (9) months after the costs were allegedly incurred by DynCorp. (Ex. 4, Walkways Subcontract, Part II, Commercial Terms ¶¶ 8.3, 8.5.)

52.     This backcharge notice did not provide Omran an opportunity to address the issue, as required by paragraph 8.5 of the Commercial Terms of the Walkways Subcontract.

53.     On April 9, 2011, DynCorp submitted a notice of intent to backcharge on the Latrine Subcontract in the amount of $1,960.00 for charges invoiced to DynCorp on April 20, 2010. A true and correct copy of the DynCorp April 9, 2011 Latrines Subcontract backcharge is attached as Exhibit 8.

54.     This backcharge notice was improper and untimely because it was issued nearly one (1) year after the costs were allegedly incurred by DynCorp. (Ex. 2, Latrines Subcontract, Part II, Commercial Terms ¶¶ 8.3, 8.5.)

55.     This backcharge notice did not provide Omran an opportunity to address the issue, as required by paragraph 8.5 of the Commercial Terms of the Latrines Subcontract.

56.     On April 16, 2011 DynCorp submitted a notice of intent to backcharge on the IBC Subcontract in the amount of $714.00 for charges invoiced to DynCorp on September 25, 2010. A true and correct copy of the DynCorp April 16, 2011 IBC Subcontract backcharge is attached as Exhibit 9.

57.     This backcharge notice was improper and untimely because it was issued nearly seven (7) months after the costs were allegedly incurred by DynCorp. (Ex. 1, IBC Subcontract, Part II, Commercial Terms ¶¶ 8.3, 8.5.)

58.     This backcharge notice did not provide Omran an opportunity to address the issue, as required by paragraph 8.5 of the Commercial Terms of the IBC Subcontract.

59.     By letter dated April 20, 2011, DynCorp apparently withdrew the $690.00 backcharge against the IBC Subcontract, as it only referred to the $714.00 backcharge on the IBC Subcontract. A true and correct copy of the DynCorp April 20, 2011 letter is attached as Exhibit 10.

60.     The April 20, 2011 letter also contained information that DynCorp backcharged Omran a total of $1,645.14 on the Latrines Subcontract, which increased amount was not further explained.

61.     By letter dated June 22, 2011, DynCorp informed Omran that it had increased the backcharges to Omran. A true and correct copy of the DynCorp June 22, 2011 letter is attached as Exhibit 11.

62.     The increase in backcharges was not explained, and was not supported by notices of intent to backcharge or other documentation to support the increased costs.

63.     Despite Omran's disagreement and demand for payment, DynCorp, by letter dated July 2, 2011, refused to make any adjustments to the backcharges asserted in its June 22, 2011 letter. A true and correct copy of the DynCorp July 2, 2011 letter is attached as Exhibit 12.

64.     DynCorp did not comply with the backcharge provisions of the Subcontracts and thus, was not permitted to backcharge Omran for any of the foregoing backcharge amounts.

**DynCorp's Improper Attempts to Closeout the Subcontracts**

65.     As noted above, after Omran completed its work on the Subcontracts,
DynCorp improperly attempted to close-out the Subcontracts.

66.     By letter of April 20, 2011, DynCorp notified Omran of DynCorp's
unilateral determination that DynCorp would assess $12,627 in backcharges and
$489,272.18 of Liquidated Damages, and would pay $218,483.11 to close out the
Subcontracts. *See* Ex. 10.

67.     DynCorp's April 20, 2011 close-out letter contained a final release that
would have resulted in waiver of Omran's right to payments under the Subcontracts and
waiver of its $165,198 change request for additional costs.

68.     Omran responded by letter of April 30, 2011, explaining that any delays
were the responsibility of DynCorp, including without limitation for changes in the
design and other changes, as well as delays in material procurement by DynCorp. A true
and correct copy of the Omran April 30, 2011 letter is attached as Exhibit 13.

69.     Omran also rejected any liquidated damages and demanded payment.

70.     Omran refused to sign the final release.

71.     By letter dated June 7, 2011, Omran again demanded payment of all
withheld amounts and payment of its $165,198 claim. A true and correct copy of the
Omran June 7, 2011 letter is attached as Exhibit 14.

72.     DynCorp responded by letter dated June 22, 2011 and made adjustments
to its prior close-out letter, enclosing another final release. *See* Ex. 11.

73.     In its June 22, 2011 letter, DynCorp reduced the amount of liquidated damages assessed, apparently acknowledging that some of the delays were not Omran's responsibility.

74.     DynCorp reduced the total liquidated damages on the Latrines Subcontract and the DFAC Subcontract from $489,272.18 to $171,604.59.

75.     However, DynCorp, without explanation, increased the backcharges on all of the Subcontracts.

76.     DynCorp asserted that the backcharges for the IBC Subcontract increased from $714.00 to $114,170.46.

77.     DynCorp asserted that the backcharges for the Latrines Subcontract increased from $1,645.00 to $59,297.51.

78.     DynCorp asserted that the backcharges for the DFAC Subcontract increased from $0 to $20,789.60.

79.     DynCorp asserted that the backcharges for the Walkways Subcontract increased from $10,268.00 to $12,805.00.

80.     Thus, DynCorp reduced the liquidated damages by $317,667.59, but increased the backcharges by $194,435.57, resulting in total liquidated damages of $171,604.59 and total backcharges of $207,062.57.

81.     No documentation was provided to support this substantial increase in backcharges.

82.     No explanation was provided regarding the liquidated damages adjustments.

83.     Omran did not accept these revised amounts and did not sign the final release.

84.     By letter dated July 2, 2011, DynCorp refused to make any further adjustments and included another final release that would have resulted in waiver of Omran's right to payments under the Subcontracts and waiver of its change request. *See* Ex. 12.

85.     Omran refused to accept DynCorp's close-out letters and final releases, and did not sign them.

86.     On or about October 29, 2011, DynCorp paid Omran $335,106.83, which Omran applied to the IBC Subcontract balance.  A true and correct copy of Omran's subcontract accounting for the Subcontracts is attached as Exhibit 15.

**DynCorp's Settlement with USACE**

87.     Upon information and belief, on or about December 8, 2011, DynCorp entered into a contract modification with the USACE to the Prime Contract that constituted final settlement of all issues outstanding on the Prime Contract and final acceptance of the work by USACE.

88.     Upon information and belief, DynCorp's final settlement with USACE involved payment of all withheld contract funds and a final determination that no liquidated damages were due on the Prime Contract.

89.     Upon information and belief, DynCorp obtained a complete release from USACE for all liability for the work performed under the Prime Contract.

90.     Accordingly, Omran's work on the Subcontracts was accepted by USACE and DynCorp at least as of December 8, 2011.

91.     There is no valid basis for DynCorp to withhold payment due to Omran based on liquidated damages.

**Subcontract Accounting**

92.     The IBC Subcontract was modified by the parties to increase the subcontract value by $55,200 from $2,610,956.95 to $2,666,156.95.

93.     DynCorp paid Omran $2,637,611.28 on the IBC Subcontract.

94.     There is a balance due to Omran on the IBC Subcontract in the amount of $28,545.67. *See* Ex. 15.

95.     The Latrines Subcontract was modified by the parties to increase the subcontract value by $40,068 from $1,982,521.20 to $2,022,589.20.

96.     DynCorp paid Omran $1,710,294.22 on the Latrines Subcontract.

97.     There is a balance due to Omran on the Latrines Subcontract in the amount of $312,295.09. *See* Ex. 15.

98.     The DFAC Subcontract value is $333,546.35.

99.     DynCorp paid Omran $291,913.04 on the DFAC Subcontract.

100.    There is a balance due to Omran on the DFAC Subcontract in the amount of $41,633.32. *See* Ex. 15.

101.    The Walkways Subcontract value is $28,015.00.

102.    DynCorp paid Omran $25,213.50 on the Walkways Subcontract.

103.    There is a balance due to Omran on the Walkways Subcontract in the amount of $2,801.50. *See* Ex. 15.

104.    Thus, the total amount of contract balance/retainage due to Omran on the Subcontracts is $385,275.58.

105. DynCorp has not responded to Omran's change request submitted on June 9, 2010.

106. Omran is due $165,198 on its change request.

107. In March 2012, Omran again demanded payment of all amounts owed.

108. In April 2012, DynCorp refused to release any of the remaining unpaid funds on the Subcontracts.

## COUNT I (Breach of Contract – IBC Subcontract)

109. Omran incorporates by reference the foregoing paragraphs as if fully set forth herein.

110. The IBC Subcontract between DynCorp and Omran was a valid and enforceable contract.

111. DynCorp breached the IBC Subcontract by, among other things:

    a. failing to make payments;

    b. improperly withholding money from progress payments;

    c. failing to evaluate and respond to Omran's change request;

    d. failing to pay Omran's change request;

    e. failing to grant proper time extensions; and

    f. improperly asserting backcharges.

112. As a result of DynCorp's material breaches of the IBC Subcontract, Omran has suffered damages.

113. Omran made written demands to DynCorp for payment.

114. Despite such demands for payment, DynCorp has failed and/or refused to pay Omran.

115.    All conditions precedent to payment were satisfied and/or waived.

116.    All conditions precedent to bringing suit were satisfied and/or waived.

WHEREFORE, Omran Consulting, Construction & Engineering Company respectfully requests that this Court enter judgment in its favor and against DynCorp International, LLC, in the amount to be determined at trial but not less than $129,219.97, plus pre and post judgment interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT II (Breach of Contract – Latrines Subcontract)

117.    Omran incorporates by reference the foregoing paragraphs as if fully set forth herein.

118.    The Latrines Subcontract between DynCorp and Omran was a valid and enforceable contract.

119.    DynCorp breached the Latrines Subcontract by, among other things:

a.  failing to make payments;

b.  improperly withholding money from progress payments;

c.  failing to evaluate and respond to Omran's change request;

d.  failing to pay Omran's change request;

e.  failing to grant proper time extensions;

f.  improperly asserting backcharges; and

g.  improperly assessing liquidated damages.

120.    As a result of DynCorp's material breaches of the Latrines Subcontract, Omran has suffered damages.

121.    Omran made written demands to DynCorp for payment.

122. Despite such demands for payment, DynCorp has failed and/or refused to pay Omran.

123. All conditions precedent to payment were satisfied and/or waived.

124. All conditions precedent to bringing suit were satisfied and/or waived.

WHEREFORE, Omran Consulting, Construction & Engineering Company respectfully requests that this Court enter judgment in its favor and against DynCorp International, LLC, in the amount to be determined at trial but not less than $376,819.09, plus pre and post judgment interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

### COUNT III (Breach of Contract – DFAC Subcontract)

125. Omran incorporates by reference the foregoing paragraphs as if fully set forth herein.

126. The DFAC Subcontract between DynCorp and Omran was a valid and enforceable contract.

127. DynCorp breached the DFAC Subcontract by, among other things:

    a. failing to make payments;

    b. improperly withholding money from progress payments;

    c. failing to grant proper time extensions;

    d. improperly asserting backcharges; and

    e. improperly assessing liquidated damages.

128. As a result of DynCorp's material breaches of the DFAC Subcontract, Omran has suffered damages.

129. Omran made written demands to DynCorp for payment.

130.    Despite such demands for payment, DynCorp has failed and/or refused to pay Omran.

131.    All conditions precedent to payment were satisfied and/or waived.

132.    All conditions precedent to bringing suit were satisfied and/or waived.

WHEREFORE, Omran Consulting, Construction & Engineering Company respectfully requests that this Court enter judgment in its favor and against DynCorp International, LLC, in the amount to be determined at trial but not less than $41,633.32, plus pre and post judgment interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT IV (Breach of Contract – Walkways Subcontract)

133.    Omran incorporates by reference the foregoing paragraphs as if fully set forth herein.

134.    The Walkways Subcontract between DynCorp and Omran was a valid and enforceable contract.

135.    DynCorp breached the Walkways Subcontract by, among other things:

a.   failing to make payments;

b.   improperly withholding money from progress payments;

c.   failing to grant proper time extensions; and

d.   improperly asserting backcharges.

136.    As a result of DynCorp's material breaches of the Walkways Subcontract, Omran has suffered damages.

137.    Omran made written demands to DynCorp for payment.

138.    Despite such demands for payment, DynCorp has failed and/or refused to pay Omran.

139.    All conditions precedent to payment were satisfied and/or waived.

140.    All conditions precedent to bringing suit were satisfied and/or waived.

WHEREFORE, Omran Consulting, Construction & Engineering Company respectfully requests that this Court enter judgment in its favor and against DynCorp International, LLC, in the amount to be determined at trial but not less than $2,801.50, plus pre and post judgment interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

### COUNT V – in the alternative (Unjust Enrichment)

141.    Omran incorporates by reference the foregoing paragraphs as if fully set forth herein.

142.    Alternatively, to the extent that the IBC Subcontract and/or Latrines Subcontract, or any modifications, alterations or additions thereto, are deemed unenforceable or invalid, or the labor and materials contained in Omran's change request are determined to not be part of the IBC Subcontract and/or Latrines Subcontract, Omran conferred a benefit on DynCorp by providing valuable labor and materials on the Project, fully expecting compensation from DynCorp for such services.

143.    DynCorp had knowledge and enjoyment of the benefit of the labor and materials provided by Omran.

144.    DynCorp failed to pay Omran for the labor and materials used in performing its work on the Project.

145.     DynCorp's retention of the benefits of the labor and materials provided by Omran without compensating Omran would be unjust.

146.     The value of the benefit of the labor and materials furnished is in excess of $165,198.00.

WHEREFORE, Omran Consulting, Construction & Engineering Company respectfully requests that this Court enter judgment in its favor and against DynCorp International, LLC, in the amount to be determined at trial but not less than $165,198.00, plus pre and post judgment interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

### COUNT VI – in the alternative (Quantum Meruit)

147.     Omran incorporates by reference the foregoing paragraphs as if fully set forth herein.

148.     Alternatively, to the extent that the IBC Subcontract and/or Latrines Subcontract, or any modifications, alterations or additions thereto, are deemed unenforceable or invalid, or the labor and materials contained in Omran's change request are determined to not be part of the IBC Subcontract and/or Latrines Subcontract, Omran provided valuable labor and materials to DynCorp on the Project, fully expecting compensation from DynCorp for such services.

149.     DynCorp had knowledge and enjoyment of the benefit of the labor and materials provided by Omran.

150.     DynCorp failed to pay Omran for the labor and materials used in performing its work on the Project.

151.     The reasonable value of the labor and materials furnished is $165,198.00.

WHEREFORE, Omran Consulting, Construction & Engineering Company respectfully requests that this Court enter judgment in its favor and against DynCorp International, LLC, in the amount to be determined at trial but not less than $165,198.00, plus pre and post judgment interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

### COUNT VII (Violation of Federal Prompt Payment Act, 31 U.S.C. § 3901 et seq.)

152.    Omran incorporates by reference the foregoing paragraphs as if fully set forth herein.

153.    The Project is subject to the Federal Prompt Payment Act, 31 U.S.C. § 3901 et seq. (the "Act").

154.    DynCorp failed to make timely payments to Omran in accordance with the terms of the Act.

155.    Under the Act, DynCorp is liable to pay Omran interest on the late payments.

WHEREFORE, Omran Consulting, Construction & Engineering Company respectfully requests that this Court enter judgment in its favor and against DynCorp International, LLC, in the amount to be determined at trial but not less than $550,473.88,

plus pre and post judgment interest, attorneys' fees, costs, and such other relief as this

Court deems just and proper.

COHEN SEGLIAS PALLAS GREENHALL &
FURMAN PC

By: _____

Jason C. Tomasulo, Esquire
(VSB No. 43667)
30 South 17th Street, 19th Floor
Philadelphia, PA 19103
(215) 564-1700
jtomasulo@cohenseglias.com
Attorneys for Plaintiff Omran Consulting,
Construction and Engineering Company

Dated: August 9, 2013

2212309.5 51737-0002

23